The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. In our third case today, number 23, 1887, West Virginia Parents for Religious Freedom v. Christiansen, it's all, Mr. Weist? Weist, I mispronounced your name. You know, I mispronounce these names too often, and I apologize. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, my name is Chris Weist. I represent the appellants and plaintiffs in this matter. The issue before the Court today is a very narrow issue in a case that presents, frankly, a number of issues, and that is this. Whether a district court errs by entering a Pullman stay order in a case where only a federal constitutional claim is brought, challenging the application of an unambiguous state statute that all of the parties agree applies as it is written, because of the existence of a separate state court remedy that the plaintiff selected not to pursue, but which the district court held they must pursue, and go to state court to pursue. And the answer to that question, Your Honor, is yes. The district court abuses its discretion because it is applying an erroneous view of the law by entering a Pullman order in that situation. Here, and we begin, Your Honor, with the premise that a district court has a strict duty to exercise jurisdiction conferred on them in the Martin case, Martin v. Stewart, unless an abstention doctrine applies. And here the district court entered a Pullman stay order, which requires a couple of things, none of the fundamental elements of which are met in this case. First, there has to be an unclear issue of state law that is presented for decision. And here the compulsory vaccination law, West Virginia Code 1634, is unambiguous. There's nothing unclear about it. And it wasn't... It's correct, you're challenging that statute. In its application to these plaintiffs. That's correct, Your Honor. Under the First Amendment. Under the First Amendment, under the Free Exercise Clause. Under the Free Exercise Clause of the First Amendment. How many clauses are there in the First Amendment? Like six or seven? I think that's right. Free speech, free exercise, free association. You're only focusing on the Free Exercise Clause. That's correct. Not any others. That's correct. And no other part of the Constitution. That's correct. And all you've got, as far as you're concerned, is a constitutional claim. A federal constitutional claim. One constitutional claim as to one statute. That's correct, Your Honor. It's a one-count complaint in this case that was filed. Well, I suspected that probably what you needed there was one if that's what you wanted to file. Right. But there's a different statute in West Virginia that the legislature came up with. They did, Your Honor. The EPRA. What's interesting about it. What Bailey referred to that establishes a strict scrutiny requirement for a constitutional claim. Well, no, Your Honor. What's it require? A strict scrutiny standard under that statute. And so it's not a constitutional claim. Under what statute? Under the EPRA statute. The one you're trying to challenge? No, Your Honor. It's a separate statute. It's a separate statute. Right. But that does require strict scrutiny. It requires strict scrutiny for claims brought under that statute. And there are no claims here brought under that statute. Okay. But do you think it doesn't establish, it doesn't purport to establish strict scrutiny for federal, for the federal courts? No, Your Honor. Not at all. Do you view a First Amendment claim? It does not. Not at all. They wouldn't have any authority to do that anyway, would they? They would not. And I think, Your Honor, you're cutting to the quick of the issue here. What do you want us to do? Your Honor, the same thing that the court did in SONDA. In what? In the SONDA case, which was a case that came out this year. It was a decision in which Judge Bailey also improperly invoked Pullman. And in that case, as we are requesting here, we are requesting that you vacate Judge Bailey's Pullman stay order and that you remand for him to consider the rest of the issues. They've raised, for instance, and Judge Bailey never got to addressing it, an 11th Amendment and standing issues. By the way, SONDA says he's supposed to do that first before we even get to Pullman. He's got to go and effectively address that issue. If he finds standing in the 11th Amendment, you know, experts may be able to… Mr. Wiest? Yes, Your Honor. First of all, in SONDA, in that case, the judge didn't name which state law was unclear. But here, he did name which state law was unclear. And earlier today, we had a conversation about constitutional avoidance. And it seems to me the constitutional question here could be completely avoided if the law that you're challenging were found to be in violation of the EPRA. Do you agree that the mandatory vaccination law would likely fail under the EPRA standard? Your Honor, I think it could be challenged under the EPRA standard. And what do you think would be the result of that case? If a claim were brought under the EPRA statute, and here it has not been… But if it was, hypothetically, let's say if that case was brought, what would happen? Presumably, it would be struck or presumably it would be found to be inapplicable or the EPRA would provide perhaps relief for these plaintiffs. I think the appellee would argue it does not. I'm asking your view. What would happen in that case? That the EPRA is another mechanism for relief. I think we would concede that, Your Honor. It's a mechanism for relief we've not asserted. It's under election remedies we do not intend to assert. But do you agree that if the EPRA were found to be violated by this mandate, then your case would be moot? I don't think so. And by the EPRA, you're talking about what's called the Equal Protection for Religion Act in the West Virginia Code. Yes, Your Honor. 35-1A-1 of the West Virginia Code. So if a state court, just hypothetically, hypothetically, if a state court were to find that the mandate violates the EPRA, would your federal case then not be moot? If the same plaintiffs brought a claim under the EPRA and got relief, then they would ostensibly, I think it could be moot in that instance. The problem with that, Your Honor, at least from the perspective, well, from a number of perspectives is, one, my clients have not asserted an EPRA claim and they've disclaimed any intention to do so. And I think if you look, for instance, at this court's precedent in educational services versus Maryland State... It's an even higher standard than the federal constitutional standard. Why wouldn't they bring that claim? Your Honor, for one, there's a forum issue. They could not bring that in federal court. That would have to be brought under Pennhurst in state court, for one. And for two, at least as they see it, if you look at the politics in West Virginia, there's been efforts by some legislators to enact a religious exemption that has failed. Their concern is if they win under the EPRA, the legislature is just going to go back and change the law so that it forecloses the very relief that they're seeking. They're looking for permanent relief. And your plaintiffs don't want their children to be vaccinated before they go to school. Your Honor, our plaintiffs have sincerely held religious beliefs. Isn't that right? They don't want to be vaccinated against chickenpox, hepatitis, measles, mumps, diphtheria, polio, tetanus, whooping cough, that kind of thing. And they say they don't have to do that because they're protected by the free exercise clause of the First Amendment. That's their claim. Which is a religious claim. Right. There's no exception in the statutes you're challenging. Right. There's no religious exemption. But there is one for what? There is an exception. For medical exemptions. For medical exemptions. Right. And that's vested in the Commissioner of Health. It is. Who you've sued. Correct. That's exactly right. And they, you know, unlike 45 other states, there is no— Commissioner of Health has apparently delegated his authority to somebody else. The state's immunization officer. Yeah, Your Honor, there's a— You don't challenge that part of it. Not that delegation. There's a multi-step process in West Virginia for medical exemptions. It starts with the physician, then it goes to the immunization officer, then it goes to the state health officer. So there is this multi-step— Then it goes to the circuit court. Under a deferential standard of review, that's correct. That is the process. And obviously, I'm not here to address the merits. I think that necessarily, just as there are issues about— Did you want us to reverse and remand? To vacate and remand the pullments they ordered to tell Judge Bailey to address the merits, starting, frankly, with the standing 11th Amendment, which he has to under SONDA, and then— We wouldn't have to tell him what to do. We'd just have to vacate. That's correct. The order you're challenging. Right, although in SONDA, Your Honor, that is what this court did. It said it vacated the pullment order. It said you've got to address standing 11th Amendment first, and then— Why would we have to tell him all that? I don't think you have to. I'm not supposed to be telling district judges to do things that I don't have to tell them to do. I would think you wouldn't have to tell him to, Your Honor. Obviously, the court did so to Judge Bailey in SONDA, told him to address that first. But I don't think you necessarily have to. I think he, under the law, has to do that first. Remand for appropriate proceedings. Correct. That does the job, I think. I would agree with you, Your Honor. And again— Are you suggesting, then, that a requirement of Pullman is that the plaintiff had to have raised a state law claim? Your Honor, I am suggesting that under Pullman, there's two requirements, neither of which are met here. The first requirement is there has to be an unclear issue of state law presented for decision. Obviously, raising the state court claim would present it for decision. If the EPRA plainly applied and there wasn't an exclusive remedy that had to be invoked under 35-1A-1B, which is the case, that could possibly do it. And then it has to moot or potentially moot the case. I think maybe we get to moot or potentially moot the case, but the problem here is— You said it would moot your case, so you're saying that it's not presented. So what you're saying is that the plaintiff has to raise a state law issue in order for Pullman to be applied. But we actually have a precedent in our court, Franklin and Waldron, which is 493 F. 2nd. 481, where the court ordered abstention even though the plaintiff never alleged a violation of state law and actually, like you, insisted that the court not reach the state law issue. So how is that the case? Yeah, this case is distinguishable for that reason. There was an ambiguous statute. Here, there is no doubt that the compulsory vaccination law is unambiguous. In fact, Judge Bailey's decision articulates in the first four or five pages of it what the requirements are. And they don't dispute—the appellees do not dispute it applies. The compulsory vaccination law applies. I don't even think the appellees would concede the fact— And we have a case on the issue. And we have a case on the issue. We think Sonda—Sonda, yes. We've got a case directly on point. We think Sonda is on point, yes, Your Honor. Workman, is that—Workman is on point. Workman is not on point, Your Honor. Workman's on point. He's right on point. Workman has been abrogated by the Tandon and Fulton cases. Well, I'm used to saying that, but Workman's on point. Judge Wynn in 2011. Your Honor, there were none of the issues that were raised in Workman that are raised in this case. Obviously— You have to distinguish it. Right. Well, and I think Fulton and Tandon has reflected a sea change in the U.S. Supreme Court's free exercise jurisprudence. Our sister circuits seem to disagree with you. Every one of the circuits that has reached—has looked at mandatory vaccination laws since Fulton and Tandon have agreed that first they applied rational basis and they upheld the laws. All three circuits. The First Circuit, the Second Circuit, and the Third Circuit. Your Honor, the Sixth Circuit has deviated from that in Dahl, obviously. So there is a circuit split developing on that issue. But I don't think— In one of the cases, I think that's right. The Second Circuit's had a lot of jurisprudence on this issue that's kind of been all over the place, particularly in the COVID arena. But that's not before us today. Not before us today, Your Honor. And I think that that argument will ultimately—may be before you, but that's not the narrow issue that we're here on today. Your Honor, I see that I'm out of time. I'm happy to answer any further questions, or I can address it in rebuttal. Judge Berner? No, thank you. Thank you. Mr. Ritchie? Mr. Ritchie, it's good to have you here, sir. Thank you, sir. May it please the Court, Zach Ritchie for the Appellees. I'd like to first address Judge Berner's questions to my friend. They have argued that the Pullman abstention was improper because they did not decide to plead a state law claim for violation of EPRA. I recognize that Pennhurst would not allow that, but nonetheless, the application of Pullman does not require that the plaintiff actually plead a state law claim, nor would it make any sense to impose this formalistic requirement. Pullman's a flexible, fact-dependent, equitable doctrine. And frankly, it would permit artful pleading by plaintiffs that could preclude application of Pullman. In any event, Pullman is about avoiding a needless federal constitutional decision and joining state law where there is reason to believe state courts could provide plaintiffs the remedy. What about this Houston case that they cite that says it's inappropriate on facial challenges for Pullman abstention as inappropriate on a facial challenge in the First Amendment? Certainly, Your Honor, I understand. And I think what drives – what has driven the Supreme Court in First Amendment cases to eschew Pullman abstention is the chilling effect on rights that could occur that's inherent in the delay that a Pullman abstention would create. We don't have that chilling effect here. What we have are they're still able to exercise their religious rights. They're just not able to attend school, which might – education rights under state law, not First Amendment rights. So I think that's distinguishable for that reason. And getting back to my point as to the cause of action, I think it's important that Pullman itself, if we look to the original case, is an example of why the plaintiffs – it's not a requirement that plaintiffs actually raise state law claim. There the African-American railroad porters challenged the Texas Railroad Commission's regulation under the 14th Amendment. And the Supreme Court noted, though, that other parties had raised the prospect that the commission lacked – the state commission lacked authority under another statute to issue that regulation in the first place. That hadn't been – that wasn't presented under the Fourth Amendment – 14th Amendment. And so the court said let's let the state courts decide that earlier question that could possibly moot the federal question. And that's what we have here. We have another statute that, if applied, potentially is dispositive here. And that's all that Pullman requires. Well, one other question. So he – they have – the case before us is based on the statute, the CBL statute. And there's this argument that there is no – there's nothing ambiguous about that statute. And because there's nothing ambiguous about that statute, I think his argument is that it puts us in a different position than these other cases that were cited earlier. What's ambiguous about the CBL? So I will quibble with the standard here. I don't believe that Pullman requires a sort of statutory ambiguity in the sense of a term of art here. What's required is an unsettled question of state law that, if resolved, can moot or present the federal case differently. And oftentimes it is an ambiguity. In many cases it is a statutory ambiguity that requires that – I don't understand how this other state law that's not challenged has anything to do with this. Right, Your Honor. I think whether – it's simply a question of this open question. It's a new statute. It hasn't been construed by the Supreme Court of Appeals of West Virginia, for example. It would be a very different case had they done so in the context of this compulsory vaccination law, and we'd already have that answer. But it's not resolved. It hasn't been brought. There's very good reason to think it would apply here. It hasn't been briefed in this case, and it may be briefed if this court certifies questions. But nonetheless – Are you arguing for certification? We don't oppose certification, Your Honor. You know that you're supposed to answer the question. Are you supporting certification? We would be fine with certification, yes, Your Honor. You're still not answering my question. Yes, Your Honor. We will support certification. If you support certification to the Supreme Court of Appeals of West Virginia, of what kind of an issue, for God's sakes? There's not any issue that relates to the litigation here on the basis of the complaint. Right. The Pullman analysis is correct. It's not on the face of the complaint, but Pullman doesn't require that. All Pullman says is there an unsettled state law issue that could be resolved under state law in state courts that could potentially move – What about the Wisconsin case, the Supreme Court case that says that if there – You said that ambiguity is not the standard, but there they said there's no ambiguity in the state law, which would be the CBL, right, in the state statute, that the one that's being challenged, that the federal courts cannot abstain but need to proceed and decide the federal issue. I mean, so that's why I'm asking you, what are you saying is ambiguous about the CBL? I don't – we don't claim there is anything ambiguous about the CDL standing alone. What we are saying is it's an – I'm sorry. These acronyms, these lawyers throw these acronyms around like they're working for the government or something. The compulsory vaccination law issue, West Virginia Code Chapter 16-3-4. Most of them I understand them, but sometimes I understand them differently. There might be overlap and things like that. I don't like acronyms either, Your Honor. And I've been in the Army, in the Air Force, and I didn't like them then. To your point, Judge, I think in many cases the Supreme Court has described the Pullman standard differently. It has described it as there's an ambiguity in state law. There's an unresolved question. There's uncertainty about state law or a state law issue. It's broadly – it's an equitable doctrine that's sort of broadly written. So if the circumstances present, these are all factually dependent – factually intensive analyses. If there are circumstances like in Pullman itself where there was this other statute, this authorization for the Texas Railroad to empower them to issue regulations, the commission, if that could be read in a way, and there was a good reason to think it could be, that would knock out that order and prevent the federal court from ever having to issue an advisory opinion on the 14th Amendment, then that is what – then that's what the Supreme Court directed. That's what Judge Bailey – What would be an advisory opinion? An advisory opinion is rendering a decision that's unnecessary to resolve the case. Certainly. If it's necessary to resolve the case, it's not an advisory opinion. Because of the enactment of the Equal Protection of Religion Act and the apparent – the application on its face, the application to the circumstances of this case, the federal constitution question may well be needless if under state law the plaintiffs can get precisely the remedy they seek. And we contend, as we have before in the district court and here, that that is what the Equal Protection for Religion Act could permit and that they should proceed to state court. This Pullman – Counselor, in your brief you cite to an unpublished 2015 decision of the West Virginia Supreme Court, the Mercer County case. And in that – it's not clear to me why it's unpublished. It seems to be an important decision. But in that case, it's a strict scrutiny case and a compulsory vaccination requirement is upheld under a strict scrutiny analysis. So why would the result be any different here if the Supreme Court of West Virginia were to reach the issue under the EPRA? Isn't it the exact same analysis? That, I believe, is uncertain, Judge. I wouldn't – I would not presume to say that it's the same analysis. The statute, which of course has come later, EPRA has come after that decision. The wording of that statute is somewhat slightly different than the equal protection analysis that is typically done as a constitutional analysis. And so I think we should – Are you saying that the statute calls for a form of heightened strict scrutiny? I don't – it hasn't been briefed, but what I'm saying is it uses different words. And I think the state Supreme Court could interpret the EPRA language perhaps to be different and maybe heightened, maybe not, but we don't know. And it's an open question because of that, the different language used in subsection A1 of EPRA and how they – Can you answer the question that I asked your colleague about mootness? If the state court were to find that EPRA invalidates the vaccine mandate as applied to their – to the plaintiffs, would then this case be moot? I think quite possibly, yes. I think it would depend on the precise disposition in the state court proceeding, how the relief – if it fully took care of the relief they were seeking in this court. So it would depend on what it says, but I think quite possibly, yes. And again, that is the purpose of Pullman is to defer in certain circumstances where there is reason to believe that the state court under state law can resolve the challenge to state law. And so the federal courts do not have to render an unprecedented advisory opinion here on a federal constitutional issue. I think it's on all fours. We have the state attorney general on behalf of the state. In an advisory opinion, you can strike the word advisory. I do strike the word advisory. You're right, Your Honor. An unnecessary – we don't – we want to avoid an unnecessary federal constitutional decision, and there's good reason to think here in the circumstances because of EPRA that that can be avoided. We have the state attorney general filing an amicus brief on behalf of the state in the lower court. Again, even though EPRA was not raised – Now, why is the housing attorney general not up here standing where you are? I thought the attorney general had an obligation to support the laws of legislature. I am a special appointed assistant attorney general. You're an assistant attorney general. I am a special appointed assistant. You are. So the attorney general – I thought when I was – I never was a state attorney general or worked for them. But when I was with the federal government, the attorney general defended what are laws, the federal laws. And the office is indeed defending. I'm being supervised by two deputy attorneys general. So the attorney general has got two positions here. The attorney general office is split, and there's a – The attorney general has two positions here. He has the position you espouse, and he has the position he espouses, which says the laws are constitutional. Not quite. The attorney general's position is what's for the state in the amicus brief. Our position is the position of Dr. Christensen and Commissioner Davis. So the state has one position, and you have another position. Yes, sir. But you're the state attorney general. For purposes of defending the particular appellees, yes, sir. I'm a special assistant attorney general. And so we have – but the state – the attorney general can speak for the state's legal interests, and he's done so below by saying that EFRA is directly relevant, applies strict scrutiny, and indeed I think he goes as far as saying it would be – When they were fighting the Indian Wars, they used to have in books that the Indians said that the people back in Washington spoke with forked tongues. They had a bow tied to their mouth. So that's sort of what West Virginia is doing here. I would quibble with that, Judge. I think the attorney general is within his state constitutional authority to render his views of the law separate from other individuals in state government, and that's what's happened here. And not – I don't – it doesn't happen. Have you abandoned your argument that this court lacks subject matter jurisdiction over Mr. Christensen? Are you speaking as to standing, Your Honor? Yes. Well, I believe you argued that the health commissioner doesn't have the power to enforce the mandatory vaccination law. Yes, Your Honor. We haven't abandoned our – what I'll call the Ex parte Young argument. We think that the connection is tenuous that is required under Ex parte Young. As the court knows, the officials sued have to have some connection to the enforcement of the law. And we think here Dr. Christensen does not – what plaintiffs seek, what the appellants are seeking is entry into school, public school, notwithstanding the vaccine requirement. Dr. Christensen cannot give them that relief. He cannot – he does not enroll students. He does not permit them in. But wouldn't he – so let me ask you – that takes us back to this Sonda case, this recent decision from this court. But wouldn't the – I think it's the same district court judge. But wouldn't the district court judge – and obviously I think Sonda came out after Judge Bailey ruled in this case. But wouldn't a district court have to go back and look and determine standing, especially since that's one of the issues that you all are arguing in this case is that, hey, we're the wrong defendant. You're suing the wrong defendant. Wouldn't he have to determine standing? That is what happened in Sonda is the court – there was a problem with the Pullman order itself. But the court also indicated in its remand that the court should, as a matter of confirming its subject matter jurisdiction, assess standing. The court always has to assess jurisdiction. Right, and we do raise the standing arguments, which are essentially derivative or the same as the ex parte Young argument. So this court's decision in South Carolina Disability Rights makes that clear that the analysis of traceability and addressability are sort of intertwined with the same issues that are addressed in ex parte Young. So to the extent that this court finds that there is some connection there, then the standing issue I think doesn't carry much water. But we haven't waived it. We think it's still a live issue in the litigation, however. What do you think about your colleague's argument that the – that EPRA could be repealed? And so the court should reach the First Amendment issue even if EPRA would resolve – even if the EPRA challenge would resolve the case? I think it's entirely speculation. The compulsory vaccinating statute could be repealed. And indeed, every session there are efforts to make substantial modifications to it. And this last session alone were substantial modifications to it that could have impacted the case. The governor ultimately vetoed it. But nonetheless, that's speculation, and we just have to – You say they were – there were changes approved and vetoed? The governor vetoed them, yes. The governor vetoed it. The governor vetoed it, yes, and it wasn't overridden. And so it's speculation, and I don't think we can rest on that for – in this case because, again, the Pullman order at issue here was issued in August of last year. The plaintiffs could have at any point taken – initiated a state court action under EPRA to try to seek the relief. They haven't done so. Well, the plaintiff is – the plaintiffs are entitled to draw their own complaint. That's pretty well settled, and the master of the complaint is the plaintiff. That's what it is. Now, we could – if we certify something to the Supreme Court of Appeals of West Virginia, and they accept certifications. Some states don't, including one in our jurisdiction, don't accept certifications at all, North Carolina. But West Virginia does, but if they want to. They have to – they only accept it if they want to take it. Now, why in the world would they want to get mixed up in this? I don't see the incentive for the West Virginia Supreme Court of Appeals to be willing to address the issue of – that's presented in this complaint, which is the First Amendment issue. Two responses, Your Honor. You're correct. They could refuse to answer, refuse to dock it entirely within their discretion to do so. Secondly, however, it is my understanding and practice that they invariably take a certified question from federal courts. And certainly this court, they've done so on many occasions, especially lately. So if we were to send a certified – what would be the question? Well, we – at the end of our supplemental brief, we propose two questions that track the language of the statute and attempt to do so in a fair way. Is one of them the issue of the statute that's not involved in this case? Well, I would dispute that EPRA is not involved in the case. I think it's not been raised by plaintiffs in their complaint, but that doesn't control Pullman analysis. I guess what I'm asking, because I don't think you – I think I understand your argument that the CBL compulsory vaccine law is standing alone. What they brought before the district court is not ambiguous. But somehow, because now the state has this EPRA, that it creates some ambiguity there? Is that the argument? We don't believe it creates an unsettled nature, an issue that presents a question of state law that, if resolved, could moot, could avoid the need for a federal constitutional decision. And again, Pullman is a great example of this. But a lot of Pullman cases do involve ambiguities in the traditional understanding of that word. But really what we're talking about are unresolved questions that, if decided under state law by states' courts, could prevent the need for a federal constitutional adjudication. And so what's the unresolved question? What's the unresolved question? Yes, yes, the unresolved question is whether the compulsory vaccination law would survive the strict scrutiny-type analysis presented by the legislature in the EPRA Act. But in strict scrutiny, whether strict scrutiny applies in a federal courthouse is up to the federal courts. It's not up to the legislature in West Virginia. Correct, Your Honor. And it couldn't be. Correct. We don't argue that. Then why in the world do you want to certify? So the West Virginia legislature can't tell us what our standard of review is. If it's strict scrutiny, we've got to decide. The Supreme Court does or something. But we don't decide it. I mean, they don't decide it. And all Pullman says is, if there's a potentially dispositive state law issue, we've got to give the state courts the first crack at it. But they don't decide our standard of review. Correct. I agree. But wouldn't that be a parallel state law? And isn't that what I guess they're arguing is that you would be creating a parallel state law question and that abstention doesn't apply? That Pullman would not apply? Well, I think the question, the state law, unresolved state law question here exists whether they want it to or not. And whether they want to bring it or not is up to them. But what Pullman says is federal courts should stay their hand while plaintiffs can take these state law questions to state court and resolve them and potentially avoid the need for a federal court to issue that constitutional decision. And that's the genesis that's from Pullman from the very beginning. And it doesn't create an exhaustion requirement at all. It's not a condition precedent to litigation. Rather, these doctrines of abstention serve federalism by sending – Did you ask Judge Bailey to certify this or to enter the Pullman order? To enter the Pullman order, yes, sir. We did request that. So he reacted to you? Yes, sir. There were cross motions for summary judgment both on Pullman-related issues as well as the – But you didn't ask him to certify. Correct. That wasn't raised. But you asked us to certify. I think you asked us for briefing. We asked you to tell us about it. I don't think – When you take a position, we ought to certify. I think it serves the same ends. They take a position we shouldn't. The plaintiffs take a position we shouldn't. Correct. I think Judge Berner had a question earlier. Yes. Go right ahead, Judge Berner. You mentioned that you sought Pullman abstention in this case, and I wanted to know what level of deference we should show to Judge Bailey's decision to grant Pullman abstention. Yes, Your Honor. This circuit, like all others, apply an abuse of discretion standard, and that analysis is if the standards, if each element of Pullman are met, then it's not an abuse of discretion. It's within the discretion of the court. And frankly, had the court – had this very judge decided, even though the elements of abstention were met, he could have decided in his discretion not to abstain. I think there's wide discretion granted to district judges in this respect because it's ultimately just a stay order, a temporary stay that does permit the plaintiff to take the case to state court and then return for federal adjudication if necessary. Unless there are any further questions. Thank you very much, Mr. Ritchie. Thank you, sir. Good to have you here. Mr. Reist, I mispronounced your name. That's okay, or Weist. Weist, Mr. Weist. Your Honor, I think it is important to – and I want to just quickly address the standard of review. It is a de novo standard of review on whether or not the Pullman elements are met. Now, if they are met, then it's abuse of discretion. But whether or not the Pullman elements are met is de novo, and that comes out of the Martin v. Stewart case, 499 F3rd 360-365. That's a 2007 case from this court. Our contention is the Pullman elements are not met here. And I want to be clear. There is no unclear issue of state law in terms of the compulsory vaccination law. In fact, I think we just heard that concession. What I heard from my friend was, oh, you've got another remedy. You can bring an EPRA claim, and that might give you relief. And then I turn back to this court's 1983 decision in Educational Services v. Maryland State Board of Education, 710 F2nd 170. And this is at 173 of that decision, in which this court said that's not good enough. And let me quote the language. Quote, in this case, however, the only state law questions are ones either not at issue or, in effect, duplicative of the constitutional claims alleged by the plaintiff. In other words, if you've got a state court remedy, that's not enough to invoke Pullman. There has to be an unclear issue of the challenged law. That's what gets you to Pullman. That's what gets you to an unclear issue of state law presented for decision, which is one of the Pullman elements. And so we do not have anything that's unclear about the compulsory vaccination law. As I've indicated, Judge Bailey, you know, frankly outlined in the first four pages of his decision how it applied and that it was unambiguous. And I want to talk just briefly about the implications of what they are suggesting Pullman requires, which this court has never endorsed. There are state constitutional provisions that people can sue under, a state court challenge. There are other statutes that people could elect remedies to pursue. And what they are, in effect, saying is, well, hey, if it's a case of first impression, a federal court can advocate its responsibility and force you into state court to litigate these state court claims that you've elected not to bring. And I want to be clear about the problems that that presents when one considers federal constitutional rights. One case I think about is the Bostick case. In Bostick, there was a challenge to same-sex marriage. I think that case came out of North Carolina. Think about it. If the state can go and sit there and point back to the plaintiff and say, you've got a state court remedy and you've got to pursue it, no one will ever be able to vindicate constitutional rights in federal court until they've gone through an entire state court process. And the problem with that is the Supreme Court has indicated that is impermissible. There cannot be any state court exhaustion requirement to vindicate constitutional rights because of the importance of it, whether it's the Thompson 1974 case or Nick versus Township of Scott. We have to be able to vindicate constitutional rights in federal court, and it's not enough to sit there and say, you've got to go to state court and invoke a separate remedy that you've never elected to pursue so that you can vindicate your federal constitutional rights. Now, it would be different, I think, if the compulsory vaccination law that's being challenged here is ambiguous. If there was a question about its application, that is where typically Pullman has been invoked. And one of the things I wanted to address was Mr. Ritchie's suggestion. Now, which law are you talking about that's ambiguous? We are saying, Your Honor, that the compulsory vaccination law, the requirement – you went through a list of vaccines that are required to attend school in West Virginia. That's the one you're challenging. That's the one we're challenging, and that is unambiguous. There is no ambiguity about that. What's that? There is no ambiguity in that statute. It is unambiguous. So which one is ambiguous? Well, I don't even think the EPRA is ambiguous. I think what they're saying is, hey, if you bring an EPRA claim, you might get relief in state court. In other words, if you pursue a state court remedy, you might get relief in state court. Well, I think he's also making this claim that it seems like the ERPA, the new state law, creates some ambiguity with the CBL. And so that's the ambiguity that gets you under Pullman back into state court. Yeah, I don't think that that's correct, Your Honor, for this reason. There is an exclusive remedy under the EPRA in which, and this is the subsection B of 35-1A-1, where it indicates that it has to be invoked. And you asked us in supplemental briefing to brief the certification question. Obviously, we thought it was inappropriate to do so, but we did pose a question, a certified law question, which is, number one, does the EPRA even apply if it's not been invoked? Because there's an exclusive remedy under 35-1A-1B to invoke it. And if you've not invoked it, it doesn't apply. It's a state court remedy, which is the problem and frankly puts this on all fours with the educational services case out of this court. And so it's not been invoked here. We do not intend to invoke it. Obviously, we've not invoked it in the year or so since Judge Bailey put on his stay order. My clients have no intention to ever invoke it. It's a state court remedy that they're electing under their election of remedies not to pursue. I did want to address Mr. Ritchie's discussion of Pullman because I think that it's important. Pullman began with an equal protection challenge. There was this issue in Texas about white conductors and African-American porters. And what Texas Railroad Commission was requiring was to put white conductors on each of the Pullman cars. That was the gist of it. And then there was intervening plaintiffs who said not only is this unconstitutional under equal protection, because it was, but also they don't have the authority to do this either. So there were plaintiffs before the court that were invoking this state court claim. And what the court said there was, yeah, you know what, this may moot it out, and there are claims that are being brought in that case by intervening plaintiffs. Maybe we can avoid the question because the claims were brought. And so that's why the Pullman abstention doctrine was created. We don't have that here. There's no invocation of the EPRA. We've disclaimed an intention to do so repeatedly, and we've got an unambiguous challenge that's being challenged in a one-count complaint against the First Amendment. And as in SONDA, the application of Pullman abstention here was inappropriate. It's an abuse of discretion, and frankly it's an error of law because the elements of Pullman are not met, and that issue is reviewed de novo. With that, Your Honor, we would ask that the court reverse, vacate, and remand to Judge Bailey the Pullman order and then to proceed for further proceedings not inconsistent with the decision. If there's no other questions. Thank you very much, sir. Thank you, Your Honor. Judge Benjamin and I will come down and agree counsel, and then we'll go to the next court. In this case, we'll be talking under the doctrine. All right.
judges: Robert B. King, DeAndrea Gist Benjamin, Nicole G. Berner